IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FILIMON RESENDEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Civil No.  12-cv-583-DRH-CJP |
| ) | |
| RICK HARRINGTON, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM and ORDER**

**HERNDON, Chief Judge:**

In September, 2004, a jury in Cook County, Illinois, convicted Filimon Resendez of first degree murder.  He filed a petition for habeas relief pursuant to 28 U.S.C. § 2254 (Doc. 1), raising the following grounds:

1. Trial counsel was ineffective in failing to diligently investigate the sexual assault of his daughter by the victim, and in failing to offer medical records and testimony to support a theory of second degree murder.

### I.   Relevant Facts

The facts giving rise to the conviction were described in detail by the Illinois Appellate Court, First District, in its order affirming the dismissal of petitioner's postconviction petition.  On August 1, 2001, Resendez shot Luis Sanchez, his "best friend and drug dealing associate."  Petitioner's theory of the case was that "he had been provoked into a sudden and intense passion upon learning from his nine-year-old daughter that the victim had sexually assaulted her . . . ."  Doc. 16,

Ex. M, p. 2.[1] Brenda Rodriguez, another friend of petitioner, was at petitioner's house on the day of the shooting. She testified that she heard petitioner's daughter tell petitioner that "Luis put his thing on her thing." Resendez then told Brenda Rodriguez that he was "gonna go take care of business." Rodriguez accepted his offer of a ride home. The Appellate Court described the ensuing events as follows:

> The defendant drove to a parking lot where they met Sanchez, who entered the defendant's truck. The three then left the lot. After driving for a while, the defendant parked at a trucking dock. Rodriguez remained in her seat while the men exited and walked to the back of the truck. Rodriguez then heard two or three gunshots. When she looked in the side mirror, she saw the defendant pointing a gun to the ground. She lifted herself up to get a view of the ground through the mirror. She saw Sanchez on the ground and heard him say, "No, Filly, no" to which the defendant replied, "I told you." She then heard two more gunshots.

Ex. M, p. 4.

The victim's girlfriend, Angelica Sanchez, testified that "the victim sold drugs for the defendant." Earlier on the day of the shooting, Resendez and Brenda Rodriguez came to the victim's house. Petitioner and either Rodriguez or the victim mixed cocaine in the kitchen. The victim later told Angelica Sanchez that the cocaine was "no good" and could not be sold. Ex. M, p. 4.

On the day of the jury selection, petitioner's attorney asked for a continuance to obtain the daughter's medical records and to speak with petitioner's daughter and her mother. The state made an offer of proof that its witness, Brenda Rodriguez, would testify that she heard petitioner's daughter tell him that the victim had assaulted her. In denying the continuance, the trial judge

---

[1] All exhibits referred to herein are attached to Respondent's Answer, Doc. 16.

reasoned that "what is relevant and admissible is what the defendant's state of mind is. If the defendant was told that and it was not true, it doesn't matter. The statement of the daughter to him is not being offered for the truth of the matter but merely to [sic] how it reflects on his state of mind." Ex. H, pp. 81-82.

The defense did not present any evidence. Before closing arguments, petitioner's attorney told the court that she had received the medical records. She stated, "I had a chance to look them over and after looking them over the decision was made not to call any additional witnesses at this time." Ex. M, p. 5.

In rebuttal closing argument, the state argued that the daughter's statement that "Luis put his thing on my thing" did not "give him an excuse to go out and commit murder." Rather, petitioner should have called the police and "a jury of his peers would decide whether or not Luis committed that offense." Counsel went on to observe that "[w]e will never know "whether Luis committed an offense" or "which Luis his daughter was talking about." Ex. S, pp. 45-46.

Petitioner was sentenced to consecutive prison terms of 20 years for first degree murder and 25 years for discharging a firearm that caused the victim's death. Ex. M, p. 1.

After he was convicted, Resendez filed a motion for a new trial in which he argued that the court erred in denying his motion for continuance. Ex. R., p. 88. During argument on that motion, petitioner's attorney stated:

> And prior to starting the trial as it is stated in my motion, Judge, I did obtain new information from speaking to Mr. Resendez and the mother of his children. I did bring it to your Honor's attention and was able to obtain the medical records in question while the trial was in progress. As stated

> in my motion, Judge, I did review them. However, based on the time constraints and the fact that the trial had already begun, I did choose not to introduce the medical records or put on Mr. Resendez's daughter.

Ex. W, p. 49.

Petitioner raised the issue of ineffective counsel in both his direct appeal and in his postconviction petition. He attached his daughter's medical records and affidavits from his daughter and her mother to his postconviction petition. Ex. H, pp. 61-77.

The medical records reflect an examination of petitioner's daughter performed on August 16, 2001, about two weeks after the murder. The doctor filled out a Suspected Sexual Abuse Form. Her assessment was "9 year old female who reports vaginal digital penetration + kissing with physical exam demonstrating minimal hymenal tissue suspicious for trauma as reported." Ex. H, pp. 66-67.

The daughter's affidavit was dated February 27, 2009. She stated that she was "raped by Luis." She said she told "Brenda" on the day of the murder, and Brenda then told her father, who "was furious." Doc. H, pp. 69-70.

The mother's affidavit indicates that her daughter told her "about the incident" only after Luis was buried. Doc. H, pp. 74-75.

## II.  Applicable Legal Standards

**1.  Law Applicable to a § 2254 Petition**

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA. "The Antiterrorism and

Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002).

Habeas is *not* yet another round of appellate review. Section 2254(d) restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases. " *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012), *citing* Williams *v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1). *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003). The unreasonable application standard is "a difficult standard to meet." *Id.*, at 662. Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well

outside the boundaries of permissible differences of opinion." *Id.*, at 662 (internal citation omitted).

### 2. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be analyzed under *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Analysis under *Strickland* and on habeas review under § 2254 are both highly deferential. Where, as here, both apply, the review is "doubly" deferential. *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

In order to show ineffective assistance of counsel under *Strickland*, a petitioner must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and (2) "that the deficient performance prejudiced the defense" ("the prejudice prong"). *Strickland*, 104 S. Ct. at 2066-2067. In order to be entitled to habeas relief, the petitioner must satisfy both prongs of the *Strickland* analysis. However, there is no mandatory order for the analysis, and a habeas court is not required to address both prongs if the petitioner has failed to make a sufficient showing on one. *Id.* at 2069.

Under *Strickland's* performance prong, a court enquires into "the objective reasonableness of counsel's performance." *Harrington*, 131 S.Ct. at 790. "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Id.* at 791. There is a strong presumption of adequate assistance and the exercise of reasonable professional judgment to avoid the

temptation to second-guess counsel's assistance. *Id.* at 789. Indeed, a petitioner's right to effective assistance of counsel is violated only when counsel's conduct, in light of all the circumstances, "[was] outside the wide range of professionally competent assistance." *Strickland,* 104 S. Ct. at 2066.

With respect to prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792. Ultimately, "[t]he focus of the *Strickland* test for prejudice … is not simply whether the outcome would have been different; rather, counsel's shortcomings must render the proceeding fundamentally unfair or unreliable." *Gray v. Hardy*, 598 F.3d 324, 331 (7th Cir. 2010).

### III.   Timeliness, Exhaustion and Procedural Default

Respondent concedes that the petition was timely filed, that petitioner has exhausted state remedies, and that he presented his ineffective assistance of counsel argument for one full round of state court review in state postconviction proceedings. Doc. 16, p. 11.

### IV.   Analysis

On habeas review, the federal court assesses the decision of the last state court to rule on the merits of the claim. *Simpson v. Battaglia*, 458 F.3d 585, 592

(7th Cir. 2006). Here, that is the decision of the Illinois Appellate Court affirming the dismissal of the postconviction petition, located at Doc. 16, Ex. M.

The Illinois Appellate Court correctly identified *Strickland v. Washington*, 104 S. Ct. 2052 (1984), as the applicable Supreme Court precedent. The court also cited *People v. Hodges*, 234 Ill.2d 1, 17 (2009), which correctly notes that the *Strickland* two-pronged test requires a showing of both deficient performance by counsel and resulting prejudice. Ex. M, pp. 8-9.

Resendez argued in his postconviction petition, as he argues here, that his counsel was ineffective in failing to investigate the alleged sexual assault of his daughter and to present medical records and testimony. The state court considered the "value of the evidence that was not presented" in determining whether the prejudice prong of the *Strickland* test was met. Ex. M, pp. 9-10.

The court first considered the medical records. Noting that the primary issue was defendant's state of mind at the time of the killing, the court determined that counsel's failure to offer the medical records into evidence could not have prejudiced Resendez. "The medical records could not have had any bearing on the defendant's state of mind at the time of the murder because the records did not exist until two weeks after the murder." Ex. M, pp. 10-11.

With regard to the failure to call petitioner's daughter and her mother as witnesses, the court correctly observed that counsel's decision on whether to present a particular witness is generally a matter of trial strategy. The court was mindful that the *Strickland* standard requires the defendant to overcome a

"strong presumption" that the decision not to call a witness was sound trial strategy and that the reviewing court must apply highly deferential scrutiny free of the distorting effects of hindsight. Ex. M, pp. 11-12. This approach is, of course, completely in line with Supreme Court cases applying *Strickland*. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011), and cases cited therein.

The state court concluded that the decision not to call the mother was not objectively unreasonable because her affidavit established that she was not at Resendez's house on the day in question and did not observe or converse with Resendez before or at the time of the murder. Therefore, she was unable to give any testimony relevant to petitioner's state of mind. The court also concluded that the decision not to call the daughter was reasonable and could not have prejudiced petitioner because any testimony she could give regarding petitioner's knowledge of the sexual assault and his demeanor was available through the testimony of Brenda Rodriguez. Ex. M, pp. 11-13.

The state court's decision was not contrary to federal law because it identified *Strickland* as the applicable precedent and affirmed the principles set forth in that case. *Price v. Vincent*, 123 S. Ct. 1848, 1853 (2003).

Petitioner has not demonstrated that the state court's decision was an unreasonable application of *Strickland.* In fact, it was not. It must be remembered that this is a high bar. "It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's

decision conflicts with this Court's precedents.'"  *Nevada v. Jackson*, 133 S. Ct. 1900, 1992 (2013), citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

The state court's decision does not even arguably conflict with *Strickland*, much less demonstrate an application of *Strickland* that is outside the boundaries of permissible differences of opinion.  *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).  Petitioner's defense depended on his state of mind at the time of the murder.  Neither medical records created two weeks after the murder nor the mother's affidavit were relevant to this issue.

The daughter could have offered relevant testimony.  However, as the state court observed, counsel's decision about whether to call a witness is a strategic decision which is "virtually unchallengeable."  Ex. M, p. 11.  *See Valenzuela v. United States*, 261 F.3d 694, 699-700 (7th Cir. 2001).  *Strickland* "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."  *Harrington,* 131 S. Ct. at 790.  This means that the reviewing habeas court must not only give counsel the benefit of the doubt, but must affirmatively entertain the range of possible reasons for counsel's decisions.  *Cullen,* 131 S. Ct. at 1407 (internal quotation marks omitted).

The decision not to call petitioner's daughter was objectively reasonable. Her affidavit conflicts with Brenda Rodriguez' testimony in that the daughter said she told Brenda, not her father, about Luis abusing her.  She was a young child who no doubt would have been traumatized by being required to testify about sexual abuse in her father's murder trial.  Further, presenting her testimony

would run the risk of diverting the focus from the defense's real issue, which was petitioner's state of mind.

In his reply, Doc. 18, petitioner attempts to show prejudice by pointing to the state's rebuttal at closing. He says that the state "told the jury that their most important consideration was that the defense presented no evidence that [his] daughter was rape[d] by Luis Sanchez." Doc. 18, p. 14. That is not an accurate description of the state's argument. The state's attorney argued that petitioner should have reported the alleged abuse to the police and allowed the legal system to handle the matter. The state's attorney did observe that "we will never know whether or not Luis committed an offense . . . [or] which Luis his daughter was talking about . . . ." However, the focus of the argument was that petitioner did not have "an excuse to go out and commit murder." Ex. S, pp. 45-46.

The bottom line is that jury was informed, via the testimony of a state's witness, that petitioner's daughter told him that "Luis put his thing on [her] thing" before the murder. Thus, evidence supporting his defense was presented to the jury, and he has not demonstrated that the state court's application of *Strickland* was unreasonable.

## V.  Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§2253(c)(2). In order for a certificate of appealability to issue, petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000). Petitioner has not made the required showing. Accordingly, the Court denies a certificate of appealability.

## Conclusion

Filimon Resendez' petition for habeas relief under 28 U.S.C. § 2254 (Doc. 1) is **DENIED**. This cause of action is **DISMISSED WITH PREJUDICE**. Further, the Court declines to issue a certificate of appealability. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**
Signed this 11th day of March, 2014.

Digitally signed by David R. Herndon
Date: 2014.03.11 15:57:51 -05'00'

**Chief Judge**
**United States District Court**